*497 Voto particular de conformidad y disidente de la
Juez Aso-ciada Señora Rodríguez Rodríguez.
“En primer lugar, es tradición res-petada que cuando un caso llega al Supremo es porque su importancia así lo amerita y porque se cree que la justicia no ha sido satisfecha en el tribunal menor. Se espera del Supremo la consideración más cui-dadosa y la atención reflexiva de sus miembros. Todos ellos. Y ahí está el ajo de la cuestión. Cuando un abogado acude al Supremo en busca de justicia para su cliente y es lógico que así sea [espere que] su caso sea estudiado por todo el tribunal y no por tres de sus miembros solamente."(1)
Tras leer y analizar el nuevo Reglamento del Tribunal Supremo (2011) deseo expresar mi conformidad porque re-presenta a grandes rasgos mayor transparencia y celeri-dad en algunos procesos. No obstante, debo resaltar como un desacierto la propuesta del funcionamiento de salas de despacho. De más está decir que la manera en que se dis-pone el modo de operar de las salas, aparte de contravenir al espíritu colegiado de este Tribunal, es contradictoria a la alegada necesidad de agilizar el calendario de este Tribunal, según la Resolución suscrita por cuatro Jueces de esta Curia el 5 de noviembre de 2010.(2)
Como señalé en mi opinión disidente de la Resolución mencionada, tal proceder es el retorno a un pasado *498 indeseado.(3) Además de aquellas expresiones, debo añadir que el procedimiento propuesto en la Regla 4(b) constituye un fraccionamiento y una duplicidad de los trabajos de este Tribunal. Si fuera cierto que hay una intención de agilizar el calendario,(4) la manera que se dispuso para trabajar en salas de despacho de no menos de tres Jueces, además de desvirtuar el ordinario funcionamiento colegiado del Tribunal, representaría más trabas burocráticas a nuestra fun-ción de impartir justicia a tiempo.
La bifurcación del proceso de expedir un auto dispuesto en la Regla 4(b) es, en esencia, un acicate para la demora judicial. Pretender que la decisión de expedir un auto tenga que discutirse en dos ocasiones, claramente no pro-pende a agilizar el calendario de este Tribunal. Más aún, el que un caso, cuya expedición haya sido favorecida en la sala de despacho a principios de mes, tenga que esperar hasta el último viernes del mes para que el Pleno final-mente decida si se valida la decisión de expedir, es presen-ciar una obra del absurdo.(5)
*499 El Voto particular de conformidad del Juez Asociado Se-ñor Martínez Torres parece obviar el “acto” de que además del procedimiento oficinesco de la Secretaría y del Panel Central antes de asignar los casos al Pleno, 30 días más de dilación resulta evidentemente “bizarro”. El Voto particular de conformidad sostiene sin fundamento empírico que “[l]a experiencia de todos los años nos dice que a medida que avance el año fiscal esa demora [de casos pendientes para considerar su expedición] aumentará y para jimio de 2012 será mayor”. íd., pág. 493. No obstante, los datos es-tadísticos de este Tribunal contradicen dicho argumento, puesto que durante el año fiscal 2010-2011 logramos redu-cir de 442 a 262 los casos pendientes para considerar su expedición. Véase Tabla VI del Anejo. Si finalmente resul-tara que con el avance del año fiscal aumenta la demora de casos pendientes no considerados, entonces no sería una deficiencia institucional, sino una deficiencia subjetiva que haría vano —y por demás baladí— cualquier intento de reglamentación.
Debo aceptar que me complace que el Juez Asociado Se-ñor Martínez Torres haya reconocido en su Voto particular de conformidad que este Tribunal pudo reducir considera-blemente el número de casos pendientes y con solo siete Jueces. Sin embargo, éste considera que 544 casos “no es una cifra pequeña”, por lo que era necesaria “la ampliación de la plantilla de este Tribunal ...”. Voto particular de con-formidad, pág. 491. Si bien es cierto que tanto a mí como a los demás compañeros de esta Curia siempre nos ha pre-ocupado la agilidad con que se atiende el funcionamiento de este Tribunal, ello no significa que deba coincidir con la postura del Juez Asociado Martínez Torres de aumentar la plantilla para lidiar con una carga que bien puede ser asu-mida con solo siete Jueces. Además, merece especial aten-ción que ni en el voto de conformidad del Juez Asociado Martínez Torres ni en la Resolución para aumentar el nú-mero de Jueces del Tribunal —180 D.PR. 54 (2010)— se *500 plantea un criterio objetivo que indique la aspiración de este Tribunal en cuanto al número ideal de casos para con-siderar superado el alegado cúmulo de trabajo. Solamente conocemos de expresiones vagas, como superar el atraso, descongestionar los calendarios, excesiva carga de trabajo, entre otras. Más allá de palpar la falta de sustancia en estas expresiones, lo que denotan es la circularidad de su excusación. En fin, no podemos dejar la determinación de lo que constituyen números aceptables al arbitrio de crite-rios subjetivos de los que no tenemos certeza hacia qué operan.
Y suponiendo que sea cierta la necesidad de operar en salas de despacho, resulta contradictorio a la política de acceso a la justicia que solo la expedición de un auto tenga automáticamente exposición ante el Pleno, mientras que en las denegatorias no haya tal automaticidad.(6) Esto su-pone que si se deniega la expedición de un auto, aun cuando haya oposición de algún Juez de esa sala, a la parte afectada se le habrá truncado su petición por tan solo una tercera parte de la composición de este Tribunal. Si se diera la circunstancia de que esa parte afectada solicita una reconsideración, conforme a la Regla 4(b) otra sala dis-tinta tendría que atender esa moción, y si se presenta una moción de reconsideración subsiguiente, otra sala distinta a las primeras dos atendería ese asunto. Debido a que en el caso de una reconsideración cada sala vería el asunto por primera vez, el tiempo en que se tarde cada sala en conocer el expediente y llegar a una decisión, irónicamente am-pliará la supuesta tardanza que con tanta vehemencia se quiere combatir. Como se puede observar, esto abona a nuestra posición de que la división en salas, como está pro- *501 puesto, bifurca, repite, atrasa, fracciona, duplica y pone más trabas a nuestro quehacer adjudicativo.
Por consiguiente, sería más beneficioso, en aras del ac-ceso a la justicia, proveer a las denegatorias del procedi-miento dispuesto para las expediciones; así cualquier de-negatoria se discutiría automáticamente en el Pleno. Sin embargo, debido a la facultad discrecional de este Tribunal de expedir autos, es harto sabido que todos los años se deniega más de lo que se expide.(7) Por lo tanto, permitir que se vean en Pleno todas las denegatorias junto con las expediciones provocaría que el Pleno vuelva a ver el 100% de los casos presentados ante este Tribunal. Al final, habrá sido en vano la primera etapa burocrática de división en salas, cuando el Pleno lo pudo atender todo desde un prin-cipio, como lo hace en la actualidad.
La solución a esto es diáfanamente sencilla: descartar el modo de funcionamiento de salas propuesto en la Regla 4(b) para que no sea el propio Tribunal quien en su proce-der dilate más los procedimientos con remedios burocráti-cos, salvaguardando así el espíritu colegiado de esta Curia en todos los procesos ordinarios.(8)
*502 ANEJO
Tabla I
CASOS PENDIENTES POR CATEGORÍA:
PROMEDIO DE CASOS SOMETIDOS POR JUEZ
Años fiscales 2003-2004 a 2010-2011 y comparación con inicio del presente año fiscal
Año fiscal Sometidos al cierre del año fiscal Número de Jueces* Promedio de casos sometidos por cada Juez
2003-2004 140 7**20
2004-2005 136 7** 19
2005-2006 121 6 20
2006-2007 143 6 24
2007-2008 161 5*** 32
2008-2009 135 4**** 34
2009-2010 155 7 22
2010-2011 128 7***** 18
Año fiscal Sometidos al comienzo del año fiscal Número de Jueces Promedio de casos sometidos por cada Juez
Presente 128 9 14
*503 [[Image here]]
*504 [[Image here]]
*505 [[Image here]]

 L.R. Rivera, La Justicia en sus manos; historia del Tribunal Supremo de Puerto Rico, San Juan, Fundación Histórica del Tribunal Supremo de Puerto Rico, 2007, págs. 189-190 (citando a Avance, 10 de marzo de 1975, págs. 4-6).

 In re Solicitud Aumentar Núm. Jueces TS, 180 D.P.R. 54 (2010).

 Id., págs. 134-136. Véase, también, Opinión disidente de la Jueza Asociada Señora Fiol Matta. íd., págs. 104-118; A. García Padilla y J.J. Álvarez González, El Tribunal Supremo de Puerto Rico: la Corte Pons, 59 Rev. Jur. U.P.R. 185 (1990).

 Me veo en la obligación de desmentir cualquier argumento que tienda a aseverar la existencia de un gran cúmulo de trabajo en este Foro, máxime cuando al 30 de junio de 2011 se encontraban ante el Tribunal tan solo 128 casos sometidos para opinión o sentencia para ser atendidos entre los nueve Jueces (a razón de aproximadamente 14 casos por Juez, la cantidad más baja en los últimos ocho años fiscales). Véase Tabla I del Anejo. Esta cantidad (128 casos sometidos) contrasta con los 155 casos sometidos al 30 de junio de 2010 y que justificó para algunos el alza de Jueces en esta Curia. En otras palabras, solo siete Jueces logramos reducir de 155 a 128 los casos sometidos. Véase Tablas II y III del Anejo.
Además, es imperativo mencionar que el año fiscal 2010-2011 operó —salvo el mes de junio— con siete Jueces y terminó tan solo con 544 casos pendientes (esto incluye casos sometidos para opinión o sentencia, casos en trámite de perfecciona-miento y casos pendientes para considerar su expedición en Pleno). Compárese esa cifra de 544 casos con los 792 casos pendientes al 30 de junio de 2010, según se desprende de la Resolución mencionada. In re Solicitud Aumentar Núm. Jueces TS, supra, págs. 63-64. Nuevamente, estos números son evidencia de que en un año fiscal siete Jueces logramos reducir 248 casos pendientes (cerca de 1/3 parte), por lo que no se justifica aquel atropellado aumento a nueve Jueces. Véase Tablas IV y V del Anejo.

 Véase a Samuel Beckett, Esperando a Godot (1952) (los personajes actúan y dialogan repetitivamente, lo que redunda en un absurdo).

 De la Regla 4(b) se desprende que cuando en una sala se deniegue la expe-dición de un auto, el único remedio disponible para la parte perjudicada será la presentación de una moción de reconsideración. Esto, evidentemente, incrementa los costos de litigación de la parte, lo que redunda en otra limitación más al acceso a la justicia.

 De un total de 1,367 casos presentados ante este Tribunal durante el año fiscal 2010-2011, se expidió el 7.61% (104 casos) y se denegó el 92.39% (1,263 casos). Secretaría del Tribunal Supremo de Puerto Rico, Disposición de autos expedidos y denegados, año fiscal 2010-2011.

 Es necesario hacer la distinción que las salas de verano, por constituirse fuera del término ordinario de sesiones de octubre a junio, se exceptúan al procedi-miento habitual del Tribunal durante su término de sesiones.

 La columna se refiere al número de Jueces que constituyeron el Tribunal por la mayor parte del año fiscal.

 Durante estos años se retiró el Juez Andreu García y la Jueza Naveira Merly y fueron nombradas la Jueza Fiol Matta y la Juez Rodríguez Rodríguez, por lo que por períodos cortos el Tribunal funcionó con 6 jueces. El número se redujo definitiva-mente a 6 a partir del abril de 2005 con el retiro del Juez Corrada del Río.

 El número de Jueces se redujo a 5 a partir del 3 de diciembre de 2007 con el deceso del Juez Fuster Berlingeri.

 El número de Jueces se redujo a 4 con el retiro del Juez Rebollo López el 31 de julio de 2008. El 10 de marzo 2009 tomaron posesión del cargo los Jueces Martínez Torres, Kolthoff Caraballo y Pabón Charneco.

 El Juez Rivera Pérez renunció a su cargo efectivo el 31 de julio de 2010. En septiembre de 2010 el Juez Rivera García tomó posesión de su cargo. Por su parte, el 25 de mayo de 2011 tomaron posesión de sus cargos los Jueces Feliberti Cintrón y Estrella Martínez, por lo que el número de Jueces aumentó a 9 a partir de dicha fecha.